IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION


**DWAUN JABBAR GUIDRY,**

    Plaintiff,

vs.                                                                 Case No. 4:15cv23-RH/CAS

**JAMES B. COMEY, DIRECTOR,
FEDERAL BUREAU OF
INVESTIGATION,**

    Defendant.

_____/


## REPORT AND RECOMMENDATION

Defendant James Comey filed a motion for summary judgment, ECF No. 30,[1] and a separate motion to dismiss for improper venue or, in the alternative, a motion to transfer pursuant to 28 U.S.C. § 1406(a). ECF No. 29. Plaintiff Dwaun Jabbar Guidry, an inmate proceeding pro se, has filed a response in opposition to the motion to dismiss or transfer. ECF No. 39. Mr. Guidry also filed an amended response to the motion for summary judgment, ECF No. 40, which included a cross-claim for summary

---

[1] Each document filed in this case is now referenced "ECF No." (the Electronic Case File) followed by the document number.

judgment against Mr. Comey.  Mr. Comey has filed a response in opposition.  ECF No. 43.  These motions are ready for review.

This case was brought under the Freedom of Information Act (FOIA), 5 U.S.C. § 701, *et seq.*, seeking a release of records from the Federal Bureau of Investigation (FBI).  ECF No. 1.  Essentially, Mr. Guidry requests an order requiring the FBI to conduct "a one-time 'manual keyboard search' of" an unknown DNA sample obtained from a crime scene (victim) to determine if they match another individuals' profile from the FBI's database.  *Id.* at 3.  Mr. Guidry was the criminal defendant in case number 5:04cr254[2] in the Western Division of Texas.  *Id.* at 2.  He alleges that he first requested the manual keyboard search in January 2012, and it was denied the same month.  *Id.* at 3-4.  He filed an appeal in February 2012 which was not successful.  *Id.* at 4.  Having exhausted administrative remedies, he seeks relief in this Court contending that he is entitled to

---

[2] Judicial notice is taken that Mr. Guidry was convicted by a jury of four counts, ECF No. 70, and sentenced on June 22, 2005, to a total term of 465 months, ECF No. 94.  Notably, the court's recommendation was that Mr. Guidry be "placed in a Federal Correctional Institution as close as possible to San Antonio, Texas."  ECF No. 94 at 2.  In July 2011, Mr. Guidry filed a motion in his criminal case for post-conviction DNA testing pursuant to 18 U.S.C. § 3600.  ECF No. 145.  The motion was denied in February 2012, ECF No. 155, and affirmed on appeal by the Fifth Circuit Court of Appeals in June 2013.  ECF No. 168.

"disclosure of DNA samples for criminal defense purpose[s] in [an] effort to establish innocence . . . ." *Id.*

## A.     Motion to Dismiss or Transfer, ECF No. 29

Mr. Comey asserts that Mr. Guidry's incarceration in Florida did not alter his residency. *Id.* at 2-3. He states that Mr. Guidry resided in the state of Texas prior to his conviction and his current confinement "is not determinative for the purposes of venue" in a Freedom of Information Act (FOIA) case. *Id.* at 2. Mr. Comey also advises that "the records" sought by Mr. Guidry "are not located in this District." *Id.* at 3. "The DNA records and samples sought by [Mr. Guidry] were developed by Forensic Scientist, Garon Foster of the Bexar County (Texas) Criminal Investigation Laboratory and were later entered into evidence during Plaintiff's criminal trial." *Id.* at 4. Therefore, Mr. Comey contends that "[t]he Court with the most ties to this case would clearly be the United States District Court for the Western District of Texas." *Id.*

In response, Mr. Guidry advises that although he is currently "serving a 465 month prison sentence" at that Federal Correctional Institution in Marianna, Florida, venue is proper here because he has "declared himself a resident of the State of Florida with all three major crediting reporting

agencies." Id. at 2-3. He contends that he has been "a resident of Jackson County, Florida," since November 22, 2005. Id. at 3. Additionally, Mr. Guidry states that a "'substantial part of the events or omissions giving rise to the claim occurred' in the Northern District of Florida." Id. at 4. He requests that his choice of venue be maintained and this case not be transferred. Id. at 5.

Venue for civil actions brought pursuant to FOIA is governed by 5 U.S.C. § 552(a)(4)(B), providing that an agency may be sued in one of four places:

> On complaint, the district court of the United States in the district in which the complainant resides, or has his principle place of business, or in which the agency records are situated, or in the District of Columbia, has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant.

5 U.S.C. § 552(a)(4)(B). Of the few cases which have addressed the proper venue for a FOIA case, the courts uniformly held that a prisoner's location of incarceration is "not considered to be his residence for purposes of venue." Simbaqueba v. U.S. Dep't of Def., No. 309cv66, 2010 WL 2990042, at *3 (S.D. Ga. May 28, 2010), report and recommendation adopted, No. 309cv66, 2010 WL 2990041 (S.D. Ga. July 29, 2010) (citing

Ellingbur v. Connet, 457 F.2d 240, 241 (5th Cir. 1972) and Urban Indus., Inc. of Ky., v. Thevis, 670 F.2d 981, 986 (11th Cir. 1982)). The Simbaqueba court transferred the case to the location of the documents which were the subject of the FOIA request, noting the prisoner conceded he was not a "resident" of the Southern District of Georgia. 2010 WL 2990042, at *3. Similarly, this Court has previously concluded that a prisoner's place of incarceration is not determinative of his residence for a FOIA case, although that case was not transferred because his FOIA claim lacked merit. Hernandez v. U.S. Dep't of Justice, Bureau of Justice Programs, Justice Statistics Div., No. 3:10cv109-WS/MD, 2011 WL 818445, at *1 (N.D. Fla. Feb. 2, 2011), report and recommendation adopted sub nom. Hernandez v. U.S. Dep't of Justice, No. 3:10cv109-WS, 2011 WL 809486 (N.D. Fla. Mar. 1, 2011).

In this case, Mr. Guidry was a resident of the State of Texas prior to his incarceration, working as a police officer for the Balcones Heights Texas Police Department. ECF No. 30 at 2. He currently resides in this district solely because of his conviction and assignment by the Bureau of Prisons to the Federal Correctional Institution in Marianna, Florida. His "declaration" to the contrary notwithstanding, *see* ECF No. 49 at 3, his

current "residence" is not of his own choosing. He has no control over where he is confined because his housing location is assigned at the discretion of the Bureau of Prisons. Indeed, Mr. Guidry could be transferred from Florida to another state at any time. Nevertheless, Mr. Guidry asserts that this Court is his choice of venue and if it were accepted that he "resides" within this District, venue would be proper under § 552(a)(4)(B). Considering that Mr. Comey has already filed a motion for summary judgment, ECF No. 30, and Mr. Guidry has responded, judicial economy is better served by ruling on the pending motion for summary judgment now rather than after transfer. Accordingly, the motion to dismiss or, in the alternative, to transfer venue, ECF No. 29, should be denied.

**B.    Motion for Summary Judgment, ECF No. 30**

The FOIA "vests jurisdiction in federal district courts to enjoin an 'agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant.'" Kissinger v. Reporters Comm. for Freedom of the Press, 445 U.S. 136, 139, 100 S.Ct. 960, 63 L.Ed.2d 267 (1980) (citing 5 U.S.C. § 552(a)(4)(B)) (quoted in Bory v. U.S. R.R. Ret. Bd., 933 F. Supp. 2d 1353, 1358 (M.D. Fla. 2013)). "Generally, FOIA cases should be handled on motions for summary

judgment, once the documents in issue are properly identified." Miccosukee Tribe of Indians of Florida v. United States, 516 F.3d 1235 (11th Cir. 2008) (citing Miscavige v. I.R.S., 2 F.3d 366, 369 (11th Cir. 1993)) (quoted in Bory, 933 F. Supp. 2d at 1358)).  The relevant question on summary judgment, viewed in the light most favorable to the person making the FOIA request, is whether an agency conducted a reasonable and adequate search "calculated to uncover all relevant documents" and whether any withholdings were justified.  Landmark Legal Foundation v. E.P.A., 272 F.Supp.2d 59, 62 (D.D.C.2003) (citations omitted); Weisberg v. Dep't. of Justice, 745 F.2d 1476, 1485 (D.C. Cir. 1984); Steinberg v. U.S. Dep't of Justice, 23 F.3d 548, 551 (D.C. Cir. 1994); Bory, 933 F. Supp. 2d at 1358.  Mr. Guidry will prevail if he demonstrates that the FBI improperly withheld records, and Mr. Comey will prevail on summary judgment if he demonstrates either the reasonableness of its search or that withholdings were justified.  Goldgar v. Office of Admin., Executive Office of the President, 26 F.3d 32, 34 (5th Cir. 1994).

**1.    Relevant Facts**

   Mr. Guidry is a former police officer who has been convicted of committing multiple crimes (including kidnapping and sexual assault) while

on duty.³  ECF No. 30-1 at 2 (Hardy affidavit).  After his conviction was affirmed on appeal, Mr. Guidry "moved for post-conviction DNA testing, pursuant to 18 U.S.C. § 3600, as well as for disclosure of stored DNA samples and DNA analyses, pursuant to 42 U.S.C. § 14132(b)(3)(C)."  ECF No. 30-1 at 2.  The motions were denied by the trial court and affirmed on appeal.  United States v. Guidry, 514 F. App'x 427, 428 (5th Cir. 2013).  The Fifth Circuit's decision explains the basis for Mr. Guidry's request:

> Guidry asserts that the DNA testing he requested may produce new evidence that would raise a reasonable probability that he did not sexually assault [victim two].  He maintains that the unknown DNA on [her] clothing was from spermatozoa and that learning the identity of the person who was the source of that DNA would prove that [victim two] had lied when she testified that she had sex only with her fiancé and her assailant.
>
> Contrary to Guidry's assertion, the record shows that the DNA from the unknown individuals was not from sperm. Thus, it is not reasonably probable that determining the identity of the unknown persons whose DNA was on [victim two's] clothing and in the patrol car would lead to the discovery of a person who had sex with [her] and would contradict [her] testimony. The presence of the DNA from unknown individuals was raised at trial, and Guidry has not shown that any additional probative

---

³ Judicial notice is taken of the decision of the Fifth Circuit Court of Appeals which affirmed his conviction.  United States v. Guidry, 456 F.3d 493, 496 (5th Cir. 2006).  At the time of the incidences, Mr. Guidry was on duty and the evidence showed he first sexually assaulted five women at the Balcones Heights Police Station and then raped another woman after a routine traffic stop, putting her in his patrol car, driving to a dark, wooded area where he raped her, wearing "his gun belt throughout the rape." Guidry, 456 F.3d at 496-98.  Mr. Guidry maintains his innocence.  ECF No. 40 at 3, 27.

> evidence would result from learning the identities of the unknown individuals. The record shows that Guidry has not shown grounds for obtaining DNA testing, and his appeal presents no substantive nonfrivolous issues.

Guidry, 514 F. App'x at 428.

While pursuing that appeal, Mr. Guidry submitted his FOIA request by letter dated January 18, 2012.  ECF No. 30-1 at 3; ECF No. 30-2; ECF No. 40 at 10.  His letter did not request identifiable particular records but, rather, "requested that the FBI conduct further DNA analysis and/or indexing in connection with his criminal case for which he had been prosecuted."  ECF No. 30-1 at 3.[4]  His letter advised that the DNA samples had been "developed by the Bexar County (Texas) Criminal Investigation Laboratory, and [he] also alleged that the 'United States Attorney General [was] in the possession of analyses' at issue."  Id.; see also ECF No. 40 at 11.

In response, the FBI opened two separate requests.  ECF No. 30-1 at 3.  The first request was opened as "FOIA No.1181175-000" in reference to the DNA testing conducted during his criminal investigation, and 55 pages

---

[4] Mr. Guidry explains his request as asking "the FBI to conduct a one time manual keyboard search of DNA samples developed from crime scene evidence against DNA samples of arrestees and convicts to determine whether or not a match could be found."  ECF No. 40 at 3.

were released to Mr. Guidry on June 22, 2012.  *Id.*  The second request was opened as "FOIA No. 1181196-000" and is the issue of this action.  That second request concerned Mr. Guidry's desire for the FBI to conduct a "Manual Keyboard Search of CODIS[5] and NDIS" to see if the DNA samples matched another individual's profile in the FBI's database.  ECF No. 30 at 2-3; ECF No. 30-1 at 4; ECF No. 40 at 10.  By letter dated January 26, 2012, the FBI advised Mr. Guidry that "his request did not meet the statutory requirements" of 42 U.S.C. § 14132 and, therefore, pursuant to Title 5 U.S.C. § 552(b)(3), the requested information was exempt from disclosure."  ECF No. 30-1 at 4; ECF No. 30-3; ECF No. 40 at 11.

Mr. Guidry appealed that decision on January 31, 2012.  ECF No. 30-1 at 4; ECF No. 30-4.  His appeal was unsuccessful and the Department of

---

[5] Authorized by Congress and supervised by the Federal Bureau of Investigation, the Combined DNA Index System (CODIS) connects DNA laboratories at the local, state, and national level. Since its authorization in 1994, the CODIS system has grown to include all 50 States and a number of federal agencies. CODIS collects DNA profiles provided by local laboratories taken from arrestees, convicted offenders, and forensic evidence found at crime scenes. To participate in CODIS, a local laboratory must sign a memorandum of understanding agreeing to adhere to quality standards and submit to audits to evaluate compliance with the federal standards for scientifically rigorous DNA testing.

Maryland v. King, 133 S. Ct. 1958, 1968, 186 L. Ed. 2d 1 (2013).

Justice's Office of Information Policy sent Mr. Guidry a letter on July 23, 2012, affirming the FBI's decision. ECF No. 30-1 at 4-5; ECF No. 30-6. This case was filed on January 20, 2015, "seeking injunctive relief and a manual keyboard search comparing of the crime scene evidence developed in his case against the FBI's nationwide database of DNA samples for a match." ECF No. 40 at 12.

Mr. Hardy asserts that "[t]he purpose of NDIS is to generate leads for the law enforcement community." ECF No. 30-1 at 6. "The CODIS software performs this function by automatically running a search of all data contained in NDIS on a twice-weekly basis, in order to identify potential matches between forensic unknowns (*e.g.*, unknown profiles obtained from biological samples found at crime scenes or on crime scene evidence such as that requested by the plaintiff), and offender profiles already contained in the database and collected from convicted offenders, arrestees, or other offenders as authorized by federal or state law." *Id.* at 6-7. "Any qualifying unknown profile developed by the Bexar County (Texas) Criminal Investigation Laboratory in association with [Mr. Guidry's] case would have been uploaded by the Bexar County laboratory into the

state database and searched against NDIS routinely since the time of its upload, potentially from 2003 forward." *Id.* at 7.

A "manual keyboard search" is the same search as is routinely performed twice weekly by the CODIS software. ECF No. 30-1 at 7. The declaration submitted by David Hardy advises that the "manual keyboard search requested by [Mr. Guidry] is not a search for responsive records in FBI files as contemplated by the FOIA, but instead a specialized evidentiary database action what would result in the creation of new records and analysis of evidence related to his criminal conviction." *Id.*

Additionally, the Hardy declaration states that "even if the FBI could process this request under the FOIA, as a practical matter, the FBI has no means of identifying the unknown profile described by" Mr. Guidry. ECF No. 30-1 at 8. That is so because "the DNA samples were developed by Garon Foster of the Bexar County Criminal Investigation Laboratory, and . . . the DNA samples are in the possession of the United States Attorney General." *Id.* "The NDIS database is not indexed by name, social security number, kit number or any other personally identifying information enabling it to extrapolate the profile referenced by" Mr. Guidry. *Id.* Thus, even if a DNA profile existed, it is "not identifiable by the FBI by design."

Mr. Guidry submitted his own affidavit in opposing summary judgment. ECF No. 40 at 27-31. He states that DNA profiles were developed from five samples obtained from the shorts of the victim, pants of the victim, and the patrol car. *Id.* at 29. Those five items were listed "as forensic unknown DNA profiles." *Id.* at 29-30. Mr. Guidry asserts that "[d]eveloping the identity of the forensic unknown DNA profiles will assist with 'his' affirmative defense to establish actual innocence claims utilizing post-conviction and new trial motions in federal court." ECF No. 40 at 30.

**2.   Analysis**

Mr. Comey contends that Mr. Guidry's request for the FBI to conduct a manual keyboard search of unknown DNA samples is not a proper FOIA request because he is not seeking the disclosure of specific records but is requesting the FBI "conduct testing and analysis of DNA records that purportedly pertain to him." ECF No. 30 at 2-3, 4-5. Mr. Guidry is requesting the FBI run a comparison search of its DNA database to look for a possible match to any of the DNA samples obtained during his criminal investigation. That is not the same as producing a record which already exists. Instead, requesting the FBI to perform a comparison is to create a record which is not a proper FOIA request. *See* ECF No. 43 at 3 (stating

that "[t]he manual keyboard search requested by [Mr. Guidry] is not a search for records in FBI files as contemplated by FOIA, but is instead a specialized action that would result in the creation of new records and analysis of evidence related to his criminal conviction."). The FOIA "does not obligate agencies to create or retain documents; it only obligates them to provide access to those which it in fact has created and retained." Kissinger, 445 U.S. at 152, 100 S. Ct. at 969 (quoted in ECF No. 30 at 14); *see also* Kohake v. Dep't of Treasury, No. 15-3068, — F. App'x —, 2015 WL 7273270, at *5 (6th Cir. Nov. 17, 2015); Bory, 933 F. Supp. 2d at 1358; Peavey v. Holder, No. 09-5389, 2010 WL 3155823, at *1 (D.C. Cir. Aug. 9, 2010). Because Mr. Guidry has not shown that the FBI improperly withheld any identifiable records as opposed to creating a record, summary judgment should be entered in favor of Mr. Comey.

Additionally, Mr. Comey has demonstrated that withholding any results which possibly could be created if the FBI could run a comparison search of its records were justified. Congress authorized the FBI to establish a DNA index of: (1) DNA identification records of --

    (A) persons convicted of crimes;

> (B) persons who have been charged in an indictment or information with a crime; and
>
> (C) other persons whose DNA samples are collected under applicable legal authorities, provided that DNA samples that are voluntarily submitted solely for elimination purposes shall not be included in the National DNA Index System;
>
> (2) analyses of DNA samples recovered from crime scenes;
>
> (3) analyses of DNA samples recovered from unidentified human remains; and
>
> (4) analyses of DNA samples voluntarily contributed from relatives of missing persons.

42 U.S.C. § 14132(a). The index must be "maintained by Federal, State, and local criminal justice agencies . . . pursuant to rules that allow disclosure of stored DNA samples and DNA analyses only -

> (A) to criminal justice agencies for law enforcement identification purposes;
>
> (B) in judicial proceedings, if otherwise admissible pursuant to applicable statutes or rules;
>
> (C) for criminal defense purposes, to a defendant, who shall have access to samples and analyses performed in connection with the case in which such defendant is charged; or
>
> (D) if personally identifiable information is removed, for a population statistics database, for identification research and protocol development purposes, or for quality control purposes."

42 U.S.C. § 14132(b)(3).  That statute does not define "criminal defense purposes," but the qualifying language that access is to be given "in connection with the case in which such defendant is charged" strongly indicates that the case must be pending.  Where a conviction has already occurred, the defendant is no longer "charged" with a crime but is a convicted felon.  Access to DNA may still, in specified instances be permitted, but it is pursuant to 18 U.S.C. § 3600, and not 42 U.S.C. § 14132(b)(3).  See Thompson v. Rundle, 393 F. App'x 675, 680 (11th Cir. 2010) (noting that "the federal postconviction DNA-access statute, 18 U.S.C. § 3600, . . . overlaps with [Florida] Rule 3.853 by requiring the prisoner to assert that (1) he is actually innocent, (2) the evidence sought has not been previously tested for DNA or that subsequent DNA testing techniques could produce a more definitive result, and (3) the prisoner's identity was a disputed issue at trial.").  Mr. Guidry has already been denied relief under 18 U.S.C. § 3600.  He is, likewise, not entitled to relief under § 14132(b)(3) either.  Summary judgment should be entered in Mr. Comey's favor.

 Finally, the cross-motion for summary judgment filed by Mr. Guidry should be denied as it is duplicative of his post-conviction motion which has

already been denied. See ECF No. 43 at 3-4. Res judicata bars relitigating a cause of action that has already been fully litigated and a final judgment on the merits has been entered. Ragsdale v. Rubbermaid, Inc., 193 F.3d 1235, 1238 (11th Cir. 1999) (noting "[t]he purpose behind the doctrine of res judicata is that the 'full and fair opportunity to litigate protects [a party's] adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions.'") (qutoing Montana v. United States, 440 U.S. 147, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979)). Mr. Guidry's claim will be barred by his "prior litigation if all four of the following elements are present: (1) there is a final judgment on the merits; (2) the decision was rendered by a court of competent jurisdiction; (3) the parties, or those in privity with them, are identical in both suits; and (4) the same cause of action is involved in both cases." Ragsdale, 193 F.3d at 1238. "[I]f a case arises out of the same nucleus of operative fact, or is based upon the same factual predicate," then the "two cases are really the same 'claim' or 'cause of action' for purposes of res judicata." 193 F.3d at 1239 (11th Cir. 1999) (quoted in Sec'y of Labor v. Copomon Enterprises, LLC, 601 F. App'x 823, 826 (11th Cir. 2015). All

four of these requirements are met.  Mr. Guidry previously litigated his request for disclosure of the DNA samples and analysis pursuant to both 18 U.S.C. § 3600 and 42 U.S.C. § 14132(b)(3)(C).  Case # 5:04cr254-XR, ECF No. 155; <u>United States v. Guidry</u>, 514 F. App'x 427, 428 (5th Cir. 2013).  The claims were resolved on the merits, the parties are in privity, and the same claims were raised.  Mr. Guidry's cross-motion for summary judgment should be denied.

## Recommendation

In light of the foregoing, it is respectfully **RECOMMENDED** that (1) the motion to dismiss, ECF No. 29, be **DENIED**, (2) Defendant Comey's motion for summary judgment, ECF No. 30, be **GRANTED**, and (3) Plaintiff Guidry's cross claim for summary judgment, ECF No. 40, be **DENIED**.

**IN CHAMBERS** at Tallahassee, Florida, on February 4, 2016.

 s/    Charles A. Stampelos
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 14 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**